UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**LOYA CASUALTY INSURANCE
COMPANY,**

    *Plaintiffs*,

**v.**                           **CASE NO.  SA-21-CV-00611-JKP**

**CERTAIN UNDERWRITERS AT
LLOYDS, LONDON,**

    *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Loya Casualty Insurance's (Loya Casualty) Motion for Partial Summary Judgment and the responsive pleadings. *ECF Nos. 66,68,69*. Upon consideration, the Court concludes the Motion for Partial Summary Judgment is **GRANTED IN PART and DENIED IN PART**.

## UNDISPUTED FACTS

### A.  Underlying Incident

On February 7, 2017, Gabriel Juarez was involved in a motor vehicle accident with Terrence Rosenbalm in California, in which he was undisputedly at fault. At the time of the accident Juarez was insured under an automobile policy issued in California by Loya Casualty Insurance Company (Loya Casualty). Due to the extent of his injuries, Rosenbalm communicated to Loya Casualty an offer to settle his claims against Juarez for the policy limit. *ECF Nos. 66-2, par.4; ECF No. 66-2, exh. 4, p. 2.; ECF No. 66-4. exh. A at p. 2*. Loya Casualty responded to this

policy-limits demand but required additional terms for release of all future liability. *See id*. A dispute arose whether Loya Casualty's response constituted an acceptance of Rosenbalm's policy-limits demand. This dispute resulted in litigation, when, on December 4, 2017, Rosenbalm filed suit in Kern County Superior Court in California (the "Rosenbalm Action") seeking, among other things, declaratory judgment stating Loya Casualty did not accept his valid policy-limits demand offer made on June 29, 2017.

It is undisputed that during the pendency of the Rosenbalm Action, Loya Casualty became aware that Rosenbalm intended to submit a claim for extra-contractual liability based upon Loya Casualty's bad faith in handling the underlying bodily-injury claim, in particular, its failure to accept and properly process his policy-limits demand.[1] Loya Casualty admits: "[n]o later than October 18, 2018, Loya Casualty was first made aware of the Rosenbalm Extra-Contractual Matter." *ECF No. 25, p. 10*. In addition, during the underlying Rosenbalm action, on March 11, 2019, Loya Casualty received written policy coverage advice from its outside counsel pertaining to Loya Casualty's liability under the Juarez Policy for Rosenbalm's injuries, advising, "it is more likely than not that the cap is off the policy" (meaning the dollar value of Rosenbalm's injuries exceeded the Juarez policy limit), and "Loya does not have strong defenses in this case and may ultimately be responsible for any excess judgment." In addition, counsel advised "the value of this case is 'north of $5,000,000…,' and "given the nature of the claimant's injuries and Loya's potential excess exposure, it would be in Loya's best interest to attempt to resolve this case prior to trial." *ECF No. 66-2, exh. 4, p. 2*.

Later, Rosenbalm sought summary judgment adjudication of his requested declaratory judgment declaring Loya's response to Rosenbalm's policy-limits demand was not an

---

[1]  The parties do not provide any facts regarding the timing or resolution of the Rosenbalm extracontractual bad faith claim or whether it proceeded to litigation.

acceptance. Rosenbalm prevailed on its motion for summary judgment on this declaratory relief on June 27, 2019, when the Court declared its conclusion in open court that Loya did not accept the policy-limits demand as a matter of law. On July 23, 2019, the California court memorialized its oral findings with a written order entered into the record. *ECF No. 66-4, exh. A.*

Almost a year after learning of the potential Rosenbalm extracontractual bad faith claim, and during the pendency of the Rosenbalm Action soon after the Court issued its summary disposition, on July 18, 2019, Loya Casualty applied for professional liability insurance with Defendant Certain Underwriters at Lloyds, London (Lloyds) to cover any extra-contractual claims made against any Loya Casualty entity ('the Application"). *ECF No. 66-1, exh. 1.* It is undisputed Loya Casualty did not disclose the potential Rosenbalm bad faith claim on the insurance application in July 2019. Specifically, Loya Casualty answered "No" in response Question 9.d. of the Application which asked whether Loya Casualty had "knowledge or information of any act, error, omission, fact, or circumstance which may give rise to a claim which may fall within the scope of the proposed insurance." *Id. at p. 16.*

Effective July 20, 2019, during the pendency of the Rosenblum Action, Lloyds issued a one-year professional liability policy (the "Lloyds Policy") covering Loya Casualty, EP Loya Group, and Fred Loya Insurance Company. The Lloyds policy covers extra-contractual claims, that is, any cause of action or claim brought against any Loya entity or a Loya Casualty insured person that seeks an amount beyond the policy limit of the underlying insurance policy issued by Loya Casualty. It is undisputed that at some time undisclosed to the Court, Rosenbalm did submit an extra-contractual claim or cause of action against Loya Casualty (Rosenbalm bad faith claim). Approximately one and one-half (1 ½) years after its admitted discovery of the potential Rosenbalm bad faith claim on October 18, 2018, and close to expiration of the Lloyds

extracontractual Policy, on May 22, 2020, Loya Casualty reported to Lloyds the extracontractual

Rosenbalm bad faith claim and sought coverage for the policy limit of $1,000,000.

On August 19, 2020, Lloyds sent a "Reservation of Rights" letter to Loya Casualty's

coverage counsel, stating,

> It would appear that any extra-contractual claim against Loya Casualty, with respect to the Action, would generally fall within the substantive scope of this coverage. That is, Loya Casualty's alleged failure to properly handle settlement of the Action is said to have likely taken the "cap ... off the policy," such that it "may ultimately be responsible for any excess judgment…."

> At the time of the Application, Mr. Meza and Loya Casualty had extensive knowledge of the Action, and had been advised by you as its counsel, as early as October 2018, that an extra-contractual claim would likely be successful. In Underwriters' [Lloyds] view, this information was required to be disclosed in the Application. As such, "any claim arising from or relating to" extra-contractual exposure with respect to the Action would be excluded. However, at the moment [Lloyds] reserves all rights concerning the above matters, and request that Loya Casualty provide any further information it believes may be relevant to [Lloyds'] coverage determination.

> **D. Material Misrepresentations**
> In The Application [Lloyds] further reserves all rights concerning the Policy's provisions governing material misrepresentations in the Application [Policy at 18-19], and under New York law with respect to same. *See Estate of Chu v. Otsego Mut. Fire Ins. Co*., 148 A.D.3d 677, 677 (2d Dep't 2017)….

> While we have endeavored to identify all pertinent coverage issues given the information presently on hand, nothing contained in this letter is intended to limit [Lloyds's] rights under the Policy in any way. [Lloyds] expect to continue to investigate the Insurance Claim, including monitoring events which may affect coverage. [Lloyds] reserve all rights to raise other coverage issues, rights and defenses, or to deny coverage based on any applicable provisions of the Policy, at law and in equity, based on the facts available and as they may be developed. Nothing in this letter, and no other action taken by [Lloyds], should be construed as a waiver of any of [Lloyds's] rights.

*ECF No. 66-3, exh 6*.

On September 10, 2020, Lloyds sent a "Denial of Claim" letter to Loya

Casualty's coverage counsel, stating,

At the time of the Application, Mr. Meza and Loya Casualty had extensive knowledge of the Action, and had been advised by you, as early as October 2018, that an extra-contractual claim would likely be successful. This information was required to be disclosed in the Application. As such, "any claim arising from or relating to" the extra-contractual claim arising from the Action "is excluded." On that basis, Underwriters must respectfully deny coverage for the Insurance Claim in its entirety….

**D. Material Misrepresentations**

In The Application [Lloyds] further reserve all rights concerning the Policy's provisions governing material misrepresentations in the Application [Policy at 18-19], and under New York law with respect to same. See Estate of Chu v. Otsego Mut. Fire Ins. Co., 148 A.D.3d 677, 677 (2d Dep't 2017).

**CONCLUSION**

For the above reasons, [Lloyds] are denying coverage for the Insurance Claim. At this time, Underwriters will not be providing a defense nor indemnity to Loya Casualty with respect to any extra-contractual claims arising from the Action. Any failure by [Lloyds] to refer specifically to other provisions of the Policy and/or other principles of law is not intended to waive, and does not waive, any rights and defenses that [Lloyds] may have under the provisions of the Policy or applicable law. [Lloyds] reserves all rights to enforce any and all provisions of the Policy, including conditions contained in the Policy that might apply, as well as applicable law regardless of whether such provisions are specifically identified in this letter. [Lloyds] also specifically reserves all rights and defenses that are now available as well as those that may become available in the future. [Lloyds] reserves the right to amend, modify and/or supplement their position on coverage, if appropriate, as additional material becomes available. [Lloyds] further reserves the right to review any additional claims or amendments to any claim with respect to coverage. [Lloyds] specifically reserves the right to be placed on notice of either situation consistent with the Policy's notification requirements.

*ECF No. 66-3, exh. 7.* The parties attempted to mediate the coverage dispute; however, the coverage dispute culminated in litigation in California and here.

**B. California Action**

On June 22, 2021, Lloyds filed suit against Loya Casualty in the Superior Court of the State of California (the "California State Action"). In the California State Action, Lloyds sought declaratory relief that the Lloyds Policy excluded coverage to Loya Casualty for the Rosenbalm

bad faith claim based upon its failure to disclose the known Rosenbalm extra-contractual claim, and therefore, it had no duty to indemnify Loya Casualty.

In response, on July 13, 2021, Loya Casualty filed a Motion to Dismiss based solely on forum non-conveniens. Specifically, Loya Casualty argued it was not convenient to litigate this matter in California because Loya Casualty's principal place of business is in Texas. The California court granted this Motion to Dismiss based upon forum non-conveniens.

**C. Texas Federal Court Action**

A few days after Lloyds filed the California Action, and before that court's ruling on the forum-non-conveniens motion, Loya Casualty and two other related companies, EP Loya Group LP and Fred Loya Insurance Company[2], filed this suit (the "Texas Federal Action"), seeking similar declaratory judgment: because the Lloyds Policy provides coverage to Loya Casualty on the Rosenbalm bad faith claim, and because Loya Casualty did not make a material misrepresentation in applying for the Lloyds Policy, and because Lloyds is barred from denying coverage by failing to timely cancel the Policy and return unearned premium, Loya Casualty is entitled to a declaratory judgment declaring Lloyds is obligated to indemnify Loya Casualty for the Rosenbalm bad faith claim. In addition, in this Texas Federal Action, Loya Casualty asserts causes of action for breach of contract and bad faith and seeks damages for benefits due under the Lloyds insurance contract as well as attorney fees and exemplary damages.

Following Lloyds's Answer asserting affirmative defenses and a counterclaim, Loya Casualty filed a "Motion to Dismiss Counterclaim" in this action. *ECF Nos. 25,26*. In this Motion to Dismiss, Loya Casualty did not identify the procedural mechanism under which it sought dismissal, and in so doing, failed to identify or present argument regarding the legal

---

[2] EP Loya Group is a Texas limited partnership. Loya Casualty is a wholly-owned subsidiary corporation of EP Loya Group. Fred Loya Insurance Group is a corporation organized under the laws of Texas.

standard under which this Court should analyze its "Motion to Dismiss Counterclaim." Consequently, this Court presumed Loya Casualty sought to dismiss pursuant to Federal Rule 12(b)(6). The Court denied the Motion to Dismiss. *ECF No. 37*.

Lloyds later filed an Answer and Affirmative Defenses to the Second Amended Complaint and First Amended Counterclaim. *ECF No. 48*. As affirmative defenses, Lloyds asserts coverage is barred by: (1) bad faith conduct; (2) the express terms of the contract; (3) known loss doctrine; (4) material misrepresentation; (5) no covered loss; (6) Loya Casualty's failure to mitigate loss; (7) uninsurability of loss; and (8) Loya Casualty's failure to meet all conditions precedent. Lloyds also asserted counterclaims for declaratory relief as to policy coverage and, alternatively, recission[3]. As a counterclaim, Lloyds seeks declaration "as to the rights and duties of each party under the Policy with respect to the Insurance Claim, and in particular that there is not and never was coverage for the Insurance Claim…." *Id. at p. 13*.

Loya Casualty filed an Answer and Affirmative Defenses to Lloyds's First Amended Counterclaim. *ECF No. 51*. As affirmative defenses, Loya asserts: (1) failure to state a claim; (2) breach or failure to comply with contract terms; (3) violation of Texas Insurance Code §705.005; (4) waiver and/or estoppel; (5) unclean hands; (6) laches; and (7) reservation of unknown defenses. *Id. at pp. 11-13*. Loya Casualty now files this Motion for Partial Summary Judgment.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare,*

---

[3] Lloyd's later withdrew the alternative recission counterclaim. *ECF No. 75*.

*Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[4] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994). When a party moves for summary judgment on its own affirmative defense, that party must establish each element of the defense as a matter of law. *Crescent Towing & Salvage Co. v. M/V Anax,* 40 F.3d 741, 744 (5th Cir. 1994). When a party moves for summary judgment on its opponent's affirmative defense, it must identify those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law on that defense. *See Celotex Corp.,* 477 U.S. at 323; *Adams*, 465 F.3d at 163.

---

[4] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). As it pertains to an affirmative defense, once the moving party carries its initial burden, the non-moving party must produce competent summary judgment evidence demonstrating a genuine dispute of material fact on at least one element of the moving party's affirmative defense. *Kansa Reinsurance Co. v. Congressional Mtg. Corp.,* 20 F.3d 1362, 1371 (5th Cir. 1994); *Paredes v. City of Odessa*, 128 F. Supp. 2d 1009, 1014 (W.D. Tex. 2000).

Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, the court may consider the fact as undisputed" and "[s]uch undisputed facts may

form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, SA-16-CV-394, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co.*, *Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)(citations omitted).

## DISCUSSION

In this Motion for Partial Summary Judgment, Loya Casualty presents almost verbatim arguments presented in its "Motion to Dismiss Counterclaim." To begin, Loya Casualty states its Motion presents two hypothetical questions of law for determination:

> (1) Can an insurance company deny a claim based on an alleged misrepresentation in the application when it fails to comply with the requirements of Texas Insurance Code section 705.005?

> (2) If the insurance contract prescribes what the insurance company must do if it believes the policyholder misrepresented a material fact during the application process, but the company fails to take those required steps, can the company still deny coverage based on the alleged misrepresentation?

*ECF No. 66, p. 1.* As presented, these hypothetical questions request advisory opinions from this Court, which it cannot engage in. However, Loya Casualty continues to present argument more specific to the undisputed facts in this case. Therefore, the Court will address the substantive arguments presented within the text of the brief to the extent Loya Casualty presents valid summary judgment argument.

1) **Choice of Law Dispute**

The parties first dispute whether Texas or New York law governs the Court's determination of the issues that arise in this litigation.

Lloyds contends New York law applies based upon agreement of the parties within the Policy, which provides, "[i]n consideration of the premium charged for this Policy, it is hereby understood and agreed by both the Assured [Loya] and [Lloyds] that any dispute concerning the interpretation of this Policy shall be governed by the laws of New York." *ECF No. 66-1, exh. 2 at 68*. Lloyds contends this litigation and the issues arising within it involve contract interpretation, and therefore, New York state law should be applied.

Because Loya Casualty seeks summary judgment on Lloyds's affirmative defenses pursuant to Texas law, and there exists no dispute regarding interpretation of any contract terms, without making a choice-of-law determination, the Court will resolve the Motion for Summary Judgment based upon Texas law. Additionally, the Court concludes fact issues exist which preclude summary judgment, and therefore, the Court does not need to engage in a choice of law analysis to deny Loya Casualty's Motion for Summary Judgment.

2) **Whether Lloyds provided the Mandatory Statutory Notice Under Texas Insurance Code § 705.005 to Assert the Material Misrepresentation Affirmative Defense**

Without specifically requesting summary judgment or addressing its burden upon summary judgment, Loya Casualty presents argument on its position that Lloyds is barred from asserting the affirmative defense of material misrepresentation to excuse its lack of performance under the insurance contract. This Court will construe this argument as a request for summary judgment as a matter of law on Lloyds's affirmative defense of material misrepresentation.

11

In this presentation of argument, Loya Casualty contends Lloyds failed to provide Loya Casualty with the requisite 90-day notice that it was denying coverage based on Loya Casualty's alleged misrepresentation in its application, as required under Texas Insurance Code §705.005. Loya Casualty contends Lloyds must prove it complied with this statutory notice, and because it cannot, this affirmative defense must fail as a matter of law.

Section 705.005(b) of the Texas Insurance Code provides: "A defendant may use as a defense a misrepresentation made in the application for or in obtaining an insurance policy only if the defendant shows at trial that before the 91st day after the date the defendant discovered the falsity of the representation, the defendant gave notice that the defendant refused to be bound by the policy." Tex. Ins. Code § 705.005(b).

As plead, and under the law, Lloyds's assertion of misrepresentation is an affirmative defense to Loya Casualty's breach of contract cause of action. As an affirmative defense, at trial, Lloyds would have the burden of proving each element of the misrepresentation affirmative defense: in this instance, that it gave timely notice of denial of coverage based upon Loya Casualty's alleged misrepresentation in the Policy application. However, here, upon Loya Casualty's Motion for Partial Summary Judgment on this affirmative defense, the initial burden falls upon Loya Casualty to present evidence which conclusively shows Lloyds failed to timely provide the required statutory notice, and therefore, it is entitled to summary judgment on this affirmative defense as a matter of law. *See Sentry Select Ins. Co. v. Home State Cnty. Mut. Ins. Co.*, 533 F. Supp. 3d 466, 478 (S.D. Tex. 2021), aff'd, No. 21-40371, 2022 WL 2800809 (5th Cir. July 18, 2022); *Pelican Tug Co., L.L.C. v. Am. Home Assurance Co.*, No. 3:07-CV-00434, 2009 WL 10695215, at *6 (S.D. Tex. July 10, 2009).

To satisfy this summary judgment burden, Loya Casualty presents summary judgment evidence that Lloyds knew or should have known of any misrepresentation in the application when Loya Casualty submitted the Rosenbalm claim for coverage under the Policy. Loya Casualty contends the letter from its counsel attached to its submission of the Rosenbalm claim on put Lloyds on notice as of May 22, 2020. *ECF No. 66, p. 10, exh. 7, exh. 12, at pp. 54-55*. However, Lloyds did not notify Loya Casualty that it was denying coverage based upon any alleged misrepresentation in the application until September 10, 2020, well beyond the 90-day window required under Tex. Ins. Code § 705.005. *Id.* Theoretically, this evidence is sufficient for Loya Casualty to satisfy its initial summary judgment burden of proof on Lloyds's misrepresentation affirmative defense. Therefore, the summary judgment burden shifts to Lloyds.

In response, Lloyds recognizes the misrepresentation defense applies when an insuring party seeks to void a policy because of an insured's misrepresentation; however, Lloyds goes on to assert and admit it does not seek to void the Policy based upon Loya Casualty's alleged misrepresentation in the application, but instead, denied Loya Casualty's claim based upon an exclusion within the Policy. *ECF No. 68, pp. 14-19*. This assertion is exemplified by Lloyds's withdrawal of its recission counterclaim. *ECF No. 75*. Lloyds expresses its intent to be bound by and enforce the express terms of the Policy, arguing the express exclusion in the Application, itself, excludes from coverage any claims arising from misstatements or untruths in the Application. Lloyds specifically abandons its material misrepresentation affirmative defense, stating,

> Loya's failure to disclose the Rosenbalm Extracontractual Matter is not a Material Misrepresentation. The resulting claim is excluded from coverage, and so does not affect the risks and hazards for which Underwriters contracted. . . . Since Loya did not make a Material Misrepresentation as defined, Condition L of the Policy

> does not apply to require rescission of the Policy as Loya asserts. That Condition
> applies only "in the event the Application contains a Material Misrepresentation."
> [Dkt. 66-1, Exh. 2 at 44.] But even if Loya's failure to disclose the Rosenbalm
> Extracontractual Matter were a Material Misrepresentation (which it is not),
> Condition L would not apply to require rescission of the Policy.

*ECF No. 68, pp. 12-13.* Based upon its position that Loya Casualty's failure to disclose the Rosenbalm claim is not a material misrepresentation, and it did not deny coverage based upon a material misrepresentation, Lloyds contends the requirements under Section 705.005, specifically the 90-day window, does not apply under these facts.

Still, Lloyds presented an affirmative defense of material misrepresentation that is still live in its active pleading, the Answer and Affirmative Defenses to Loya Casualty's Second Amended Complaint and First Amended Counterclaim. *ECF No. 48.* Because, here, Lloyds represents to this Court it does not seek to void or invalidate the entire policy, but instead, seeks to assert denial of coverage based upon an exclusion in the plain language of the Policy, it appears to waive its live assertion of an affirmative defense of material misrepresentation.

Because Lloyds admits the misrepresentation affirmative defense applies only when an insurer seeks to void or rescind a Policy, and it does not seek to do so in this case, this Court concludes summary judgment shall be granted on Lloyds's material misrepresentation affirmative defense based upon this admission to the Court and the requisite waiver of this asserted affirmative defense. *See Columbia Lloyds Ins. Co. v. Liberty Ins. Underwriters, Inc.*, No. 3:17-CV-005, 2018 WL 1569718, at *5–6 (S.D. Tex. Mar. 14, 2018), report and recommendation adopted, No. 3:17-CV-5, 2018 WL 1561816 (S.D. Tex. Mar. 30, 2018).

Further, because Lloyds admits it does not seek to avoid liability under the Policy based upon any material misrepresentation made by Loya Casualty, and this Court concludes summary judgment shall be granted on Lloyds's material misrepresentation affirmative defense based

upon this admission, for the sake of judicial economy, the Court must also conclude this admission and grant of summary judgment renders Loya Casualty's request for declaratory relief ineffectual. The request hinges upon Lloyds's pursuit of the material misrepresentation line of defense, stating,

> [b]ecause the Policy provides coverage for Loya's claim concerning the extracontractual claim arising out of the Rosenbalm action, and *because Loya did not make a material misrepresentation in applying for the Policy*, and because Lloyd's is barred from denying coverage by failing to timely cancel the Policy and return unearned premium, Loya is entitled to a declaratory judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring that Lloyd's is obligated to cover the extracontractual claim arising out of the Rosenbalm claim

*ECF No. 46, Second Amended Complaint, p. 11.*

Because Loya Casualty's request for declaratory relief depends upon and presumes Lloyds will pursue only a material misrepresentation line of defense for coverage, and Lloyds's does not, and this line of defense is dismissed, the Court also must dismiss Loya Casualty's request for declaratory judgment. Further, the Court dismisses Loya Casualty's affirmative defense of "Texas Insurance Code §705.005."

### 3) Loya Casualty's Waiver/Estoppel Affirmative Defense

Again, without specifically requesting summary judgment or addressing its burden upon summary judgment, Loya Casualty presents general argument on its position that Lloyds is barred from asserting the affirmative defense of waiver/estoppel to excuse its lack of performance under the insurance contract. *ECF No. 66, pp. 12-15.* Specifically, Loya Casualty argues "Lloyds waived and/or is estopped from asserting its right to deny coverage based on the alleged 'material misrepresentation.'" *Id. at p.13.* This Court will construe this argument as a request for summary judgment as a matter of law on waiver/estoppel, which Loya Casualty pleads as an affirmative defense to Lloyds's counterclaim for declaratory relief, but presents here

as an affirmative defense to Lloyds's affirmative defense of material misrepresentation. *See id; ECF No. 51, p. 12.*

In this presentation of argument, Loya Casualty contends Condition L of the Policy required that if Lloyds believed Loya Casualty misrepresented a fact, and it denied coverage based upon this misrepresentation, Lloyds must send written notice of cancellation to Loya Casualty and must return the remaining unearned premium. *ECF No. 66, pp. 12-15.* However, Lloyds did neither, and therefore, waived and/or is estopped from asserting its right to deny coverage based upon material misrepresentation. *Id.*

For the same reasons stated above, the Court finds Lloyds waives its live pleading of the material misrepresentation affirmative defense. Therefore, this argument for summary judgment on the material-misrepresentation affirmative defense based upon waiver/estoppel is ineffectual. Accordingly, to the extent Loya Casualty presents waiver/estoppel as an affirmative defense to Lloyds's request for declaratory judgment or as an affirmative defense to Lloyds's material-misrepresentation affirmative defense, it is dismissed. For the sake of narrowing the issues and claims, the Court will not entertain further argument on Loya Casualty's assertion of waiver/estoppel as an argument or as an affirmative defense.

### 4)  Whether the Known Loss Doctrine Applies

Lloyds pleads the known loss doctrine as an affirmative defense to Loya Casualty's causes of action. Again, without specifically requesting summary judgment or addressing its burden upon summary judgment, Loya Casualty presents general argument on its position that Lloyds is barred from asserting the affirmative defense of known loss doctrine to excuse its lack of performance under the insurance contract. *ECF No. 66, pp. 15-18.* In this presentation of argument, Loya Casualty contends the doctrine does not apply because: "(i) no 'loss' – as that

term is defined in insurance law – had occurred at the time of the Application; and (ii) even if there was a 'loss,' Loya Casualty did not have the requisite scienter to trigger the doctrine." *Id*. at p. 15. Loya Casualty concludes its argument, stating, the doctrine cannot apply as a matter of law because there is no evidence it knowingly acted in bad faith by failing to disclose the Rosenbalm claim in the Application. This Court will construe this argument as a request for summary judgment as a matter of law on Lloyds' affirmative defense of known loss doctrine (also referred to as "the fortuity doctrine").

The fortuity doctrine relieves insurers from covering certain behaviors that the insured undertook prior to purchasing the policy. *RLI Ins. Co. v. Maxxon Sw. Inc.*, 108 Fed. App'x. 194, 198 (5th Cir. 2004). "Combining the principles of 'known loss' and 'loss in progress,' the fortuity doctrine holds that '[i]nsurance coverage is precluded where the insured is or *should be aware* of an ongoing progressive or known loss at the time the policy is purchased.'" *Id.* (quoting *Two Pesos, Inc. v. Gulf Ins. Co.,* 901 S.W.2d 495, 502 (Tex.App.-Houston [14th Dist.] 1995, no writ)) (emphasis added); *see also Burch v. Commonwealth Mut. Ins. Co.,* 450 S.W.2d 838, 840 (Tex. 1970). Under this doctrine, "[i]f an insured knows, or should have known, at the time it purchased the insurance policy, that its current behavior is wrongful and could result in liability, it effectively removes the risk element inherent in insurance, and therefore a Texas court will not require the insurer to pay." *RLI Ins. Co. v. Maxxon Sw. Inc.*, 108 Fed. App'x. at 198 (5th Cir. 2004) (citing *Franklin v. Fugro–McClelland (Southwest), Inc.,* 16 F.Supp.2d 732, 737 (S.D.Tex. 1997)).

Loya Casualty's knowledge of the Rosenbalm claim and its liability on this claim at the time it submitted the Application is a contested issue at the heart of this litigation. Facts and evidence that pertain to this fact question undisputedly exist, i.e. the Application, the "cap letter."

17

However, the question whether this undisputed evidence and the facts demonstrate Loya Casualty knew or should have known of an ongoing or known loss at the time it completed the Application is a fact question for the jury. Nothing Loya Casualty presents establishes this matter conclusively as a matter of law. Therefore, Loya Casualty fails to satisfy its burden to show it is entitled to summary judgment as a matter of law on Lloyds' affirmative defense of known loss doctrine. Loya Casualty's Motion for Summary Judgment will be denied on this basis.

 **5)  Whether the "Known Circumstances" Exclusion Applies**

  Loya Casualty contends Lloyds's denial of coverage hinges on its answer to Question 9.d. in the Application, which asked whether Loya Casualty was aware of any "act, error, omission, fact or circumstance which may give rise to a claim." *ECF No. 66, pp. 18-19*. Loya Casualty contends this question is ambiguous, and the most favorable interpretation is to construe it consistent with the "known loss doctrine" to mean Loya Casualty must disclose actual extracontractual losses that already occurred. *Id*. As previously argued, Loya Casualty contends the known-loss-doctrine affirmative defense does not apply as a matter of law under these facts, and therefore, "[t]he Court should interpret Question 9.d. in the Application as likewise not applying. This is fatal to Lloyds's entire coverage position and further reason to grant this motion." *Id*. at p. 19.

  Loya Casualty's contention for summary judgment is nonsensical. It provides no guidance of what affirmative defense this argument pertains to or how it pertains to the requested declaratory-relief counterclaim. Loya Casualty provides no basis for this Court to grant summary judgment, but instead, makes a blanket argument and concludes this Court should "interpret" Question 9.d. and should rule "Question 9.d. in the Application does not apply." Loya Casualty provides no caselaw to support its blanket argument or to support its proposed finding. Because

the Court cannot ascertain Loya Casualty's argument for summary judgment here and cannot hold "Question 9.d. does not apply," its request for summary judgment that "the 'known circumstances' exclusion does not apply" will be denied.

### Conclusion

For the reasons stated, Loya Casualty's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. The Court grants summary judgment on Lloyds's affirmative defense of material misrepresentation based upon its own admission that it will not pursue this line of defense. Lloyds's also withdrew its counterclaim of recission. Based upon this admission and withdrawal, for the sake of judicial economy, to the extent Loya Casualty presents waiver/estoppel and "Texas Insurance Code §705.005" as affirmative defenses, these are dismissed. Further, based upon Lloyds's abandonment of the material misrepresentation affirmative defense, this Court must dismiss Loya Casualty's request for declaratory relief which hinges upon Lloyds's pursuit of the material misrepresentation line of defense. Further, to the extent Loya Casualty presents "Failure to State a Claim" and "Additional Unknown Defenses/Reservation of Rights" as affirmative defenses, these are dismissed because they are not valid affirmative defenses.

All other requested relief in Loya Casualty's Motion for Partial Judgment is DENIED.

In light of the Fourth Amended Scheduling Order, the Court requires any party anticipating the filing of a Motion for Summary Judgment to seek permission of this Court on or before May 13, 2024, through the filing of a Motion for Permission, which outlines the points for disposition of any cause of action or affirmative defense. The Court sets this matter for trial on September 3, 2024. This trial date will not be extended.

It is so Ordered.
SIGNED this 6th day of March, 2024.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE